Keating, J. (concurring).
While I join in the result reached by the court, I do not view this case as raising any ‘1 equal protection ” problems. Bather, running through the entire area are “ due process ” considerations (Matter of Coates, 9 N Y 2d 242). Presumably, the 1 ‘ equal protection ’ ’ problem upon which the court focuses could be resolved by removing the protections presently provided for patients on an involuntary status. All would agree that this would be constitutionally impermissible. A State may not, consistent with ‘ ‘ due process ’ ’, place any mentally ill person in the custody of any person or institution unless it makes some provision for periodic review of the propriety and suitability of the confinement before some impartial forum in which the incompetent is represented by a person or agency wholly committed to that person’s interest.
Nevertheless, the safeguards required to satisfy “due process ” are directly proportional to the interference with the person’s liberty or rights and the likelihood that injustices will *395 occur. The limited nature of the infringement on the freedom of movement of voluntary patients justifies a far less rigorous system of procedural protections than those which must afforded to involuntary patients. For that reason I cannot agree that this is truly an ‘ ‘ equal protection ’ ’ case.
Section 71, however, does not adequately deal with such potential sources of abuse as improperly obtained consents and inappropriate classification of patients. The errors may result from willful disregard of the incompetent’s rights or simple inertia. Further protections are needed. When we are dealing with the rights and liberties of thousands of people, the risk of error is too great to leave the correction of errors to family or mental institutions from whence may come the abuses. A civilized society cannot do otherwise.
The argument of the dissent cannot be accepted that, if an incompetent does not understand his rights, he is hardly qualified to be released. It simply does not follow that a person who is unable to indicate a desire for assistance properly belongs in the voluntary program. In fact, under departmental regulations, such persons are prohibited from participating in the voluntary program (14 NYCRR 16.1). Mental illness encompasses almost every conceivable form of mental aberration and the voluntary program must necessarily include some persons whose best interests may require some different disposition such as placement in a diff erent type of institution. Absence of sufficient protections for voluntary patients leads me to conclude the section 71, as presently written, is violative of the “ due process ” clauses of both the Federal and State Constitutions.